**STATE of Utah, in the Interest of T. G.,**

v.

**H. G., Appellant.**

**No. 13728.**

Supreme Court of Utah.

March 4, 1975.

---

lant's moral standards are so low as to seriously damage the morals and welfare of the child.

Based on those findings, the court ordered all parental rights of the appellant terminated pursuant to law.[1] However, after court had adjourned and the parties had left, counsel for appellant conferred alone with the judge in chambers, and the order was changed as follows: He withdrew the order as made and continued the matter for six months. He directed that appellant mend her ways of living and habits in specified ways. He then ordered that the Division of Family Services provide all appropriate support services that may be indicated for Mrs. G. and give her every opportunity to learn good housekeeping practices and good parental practices, not to the extent of overriding her but to provide what she might need to assist her in making the changes in her life that would be necessary for her to justify leaving T. with her permanently.

Only appellant's attorney was present when the order was changed, and appellant certainly learned of the requirements. The Division of Family Services may have learned indirectly of the order but did nothing to assist Mrs. G. during the ensuing six months' period.

When the matter was before the judge at the expiration of the six months' period, he found that there had been no sufficient improvement in the life or habits of appellant and made the order of deprivation permanent.

Appellant claims that since the Division of Family Services did nothing to assist her, the court should not have deprived her of her parental rights. This assignment of error merits our attention, but the other assignments have no merit to them, and we will not discuss them.

It well may be that the Division of Family Services is to be censured for failing actively to assist the appellant. It may be that the court should have made its order

Lyle W. Hillyard of Hillyard & Gunnell, Logan, for appellant.

Vernon B. Romney, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for respondent.

ELLETT, Justice:

The appellant is the natural mother of T. G., a male child born out of wedlock on May 28, 1971.

On believable evidence, the Juvenile Court found that (a) the appellant had not acquired the necessary skills to properly supervise and train the child; (b) appellant's housekeeping standards were so poor as to seriously jeopardize the child's physical and emotional health; and (c) appel-

1. Section 55–10–109, U.C.A.1953 as amended (Replacement Vol. 6A).

in open court with all parties present, or at least have given official notice to all parties, including the Division of Family Services. However those matters may be, it was Mrs. G. who had to mend her ways, and she knew it. She never at any time requested aid or assistance from the Division of Family Services, and now she is in a poor position to complain because it did not voluntarily interfere with her affairs. She knew that she was to maintain a better and cleaner house, to live a moral life, and not to engage in illicit sexual activity at the apartment at any time when her child was there. She knew that these things would be conditions precedent to her being allowed to maintain her parental rights.

The evidence given to the court was such as to warrant his findings that no sufficient improvements had been made by appellant in her life and habits to prevent his making the order of deprivation.

The judgment is affirmed. No costs are awarded.

CROCKETT and TUCKETT, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent. I am of the opinion that the statute upon which the majority opinion bottoms itself—stated advisedly—is of dubious constitutional substance, including an element of unthinking.

It says the "court [1] *may decree a termination* of _all parental_ rights" if it finds "that the parent or parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child" etc. ad infinitum,—all of which seems to be a substitute for the judicial determination of abandonment as a condition precedent for adoption.

Read literally, this legislation could deny a crippled or impecunious mother the right of companionship with her child because some possibly unemotional social service person recommended such statutory disaf-

filiation. It would give an absent father paternal rights superior to those of a mother of perhaps questionable, but only transient virtue.

To permit natural kinfolk to be deprived *in perpetuity* of *all parental rights* is in my opinion somewhat of a travesty on legislative acumen, a disenchantment for a judiciary that might condone it, and a regressive society that would embrace it. The thought, if expanded a bit, and to me, is startling‘ enough to be reminiscent of the Hitlerian Youth Corps born of paternalism, fraught with sovereign forces and weighted with imperialism, that conceivably might abort any teenager's Horatio Alger dream of rags to riches, save for some Federal or State's attending to everyone else's biology but its own.

Under the decision here, a mother, though possibly errant, forever is deprived of a God-given right of association with, respect for or of, her own flesh and blood.

The best and only decent thing this court could do, it seems to me, would be to reverse the lower court, defer permanency and order continuing jurisdiction, with an emphatic interdiction that the Juvenile Court's pronouncement must not be construed as being anything in the nature of a stare decisis pronouncement, a license for adoption, an abandonment, or a Solomonic dispensation without malleability. What happens here if a natural father shows up after a provoked absence not of his choosing? (Emphasis added.)

MAUGHAN, Justice (dissenting).

Respectfully, I dissent.

The court's order of June 19, 1973, states, among other things:

The Division of Family Services be and is hereby ordered to provide all appropriate support services to give [appellant] all the help she can get in the way of training and skills in taking care of her child and her home.

---

1. Juvenile Court,—that is.

In response to the court's order, counsel for appellant composed a letter dated June 21, 1973, a copy of which was directed to and received by the social worker for the Division of Family Services. This letter stated, among other things:

. . . Legal custody will be held by Family Services who are to make their full services available to her.

In that part of the record denominated the social file the clerk reporting the hearing of June 19, 1973, includes all conditions to be observed by appellant, but deletes that part of the court's judgment set out above. It is the same clerk, who, in conversation with the social worker, reported that, in his opinion, appellant's attorney engaged in unethical conduct. The social worker testified he believed this bit of gossip, and that it colored his attitude toward appellant.

The court stated into the record the facts from which the gossip was born, dispelling the right to any inference of unethical conduct on the part of appellant's counsel. The court also stated it left instructions that all counsel be immediately notified of its order (that of June 19, 1973). The record shows that this instruction was not honored. It further shows that the only effort to communicate the order of the court was made by counsel for appellant, in his letter of June 21, 1973. The content of this letter was certainly sufficient to put the social worker on notice of what was required of him. If he desired more information the order itself could have been read—he couldn't have been apprised of the true state of affairs from reading the compositions in the social file, nor, apparently, from conversations with the clerk who composed them, for the reasons stated above.

The social worker testified that he received the letter of June 21, 1973; that he had been in conversation with the gossiping clerk; and that he believed what he heard; that he had never sat down and reviewed the conditions of the court's order with appellant; that he gave no services to appellant, following the hearing of June 19, 1973; that his attitude was, there was not "much use in trying"; that appellant had to change herself; that appellant had to first request his services; that he was not necessarily prejudiced. His testimony makes it appear he was unnecessarily prejudiced. The court did not ask that thought be given to his order but ordered it performed. This same testimony of the social worker acknowledged the conditions imposed on appellant, contained in the letter of June 21, 1973, but it did not acknowledge the conditions imposed on himself.

Subsequent to the hearing of January 25, 1974, after having given testimony sufficient to fill 38 pages of the transcript, the same social worker who had been deluded into thinking that counsel for appellant had indulged in unethical conduct, thought it proper to dispatch a letter to the court under date of January 30, 1974, giving two typewritten pages of additional testimony extolling the wisdom in his choice of foster parents, and that should the child be available for adoption he would recommend them. The letter also goes on to say that the court can be assured of his support, whatever the court's decision is—all without the nuisance of cross-examination. The writer states the letter was sent because he did not have ". . . the opportunity in court to fully express my opinion . . . ."

The court stated, in the transcript, that its order of June 19, 1973, was to give appellant a chance to prove sufficient motivation. The court's order was not an idle one—appellant had a right to rely on it. Part of that chance was that the Division of Family Services provide all appropriate support services to give appellant "all the help she can get in the way of training and skills in taking care of her child and her home." Appellant not only did not get *all*—she got *none*. A matter as cataclysmal as the permanent separation of a child from its parent should not tolerate the ineptitude

displayed by the court's staff, nor such cavalier disregard of a court's order.

For the foregoing reasons, the judgment of deprivation should be reversed and remanded, with instructions that appellant be given the help ordered on June 19, 1973, —preferably by some social worker who could take an objective view of the matter.